# In the United States Court of Federal Claims

No. 24-1706C
(Filed: May 15, 2025)
NOT FOR PUBLICATION

```
************************************
                                    *
RAYMOND JONES                       *
dba WE SEE YOU SECURITY, LLC,       *
                                    *
                  Plaintiff,        *
                                    *
     v.                             *
                                    *
THE UNITED STATES,                  *
                                    *
                  Defendant.        *
                                    *
************************************
```

## OPINION AND ORDER

On October 21, 2024, Plaintiff filed his Complaint here alleging that the Housing Authority for the City of Camden, New Jersey ("HACC") breached its contract with him and his security company, "We See You Security, LLC," to provide security services for the city. Compl. ¶ 1.

The Government now moves the Court pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims, to dismiss Plaintiff's Complaint for lack of jurisdiction and for failure to state a claim upon which relief may be granted. The motion is fully briefed. Oral argument is unnecessary. For the reasons set forth below, the Government's Motion to Dismiss is hereby **GRANTED.**

### I. Facts and Background

Plaintiff alleges that his company was hired by HACC in June 2021 "on an emergency basis" to provide security services during the Covid-19 pandemic. Compl. ¶ 9. Plaintiff alleges that his company entered an "implied contract" with HACC at this time. Compl. ¶ 8. Plaintiff further alleges that HACC requested and paid for these services incrementally until November 2023. *Id.* Finally, Plaintiff alleges that his company provided security services for HACC at three buildings, providing an average of 204 hours of security services per week. Compl. ¶ 9.

Sometime during this period, Plaintiff alleges that he began to provide security services at a fourth building, at which his company provided services twenty-four hours per day, seven days per week. Compl. ¶ 9. On September 14, 2023, HACC sent a notice informing Plaintiff that it would be terminating its use of his security services. Compl. ¶ 10; Exhibit B. Plaintiff alleges

1

that his termination was "triggered" by a recent audit of HACC. Compl. ¶ 32.

In November 2023, HACC hired a new security provider, replacing security services previously provided by Plaintiff. Compl. ¶ 32. Plaintiff alleges that the new security provider kept some of Plaintiff's employees to provide security services pursuant to the new contract. Compl. ¶ 10.

Plaintiff alleges that HACC owes him $288,000.00 in outstanding invoices for services provided at all four buildings. Compl. ¶ 9. Plaintiff alleges that this figure was "rounded down" from an excess of three hundred thousand dollars outstanding. *Id.* ¶ 10. Plaintiff alleges that he has requested the payment of these alleged outstanding invoices for nearly one year, but that HACC has "failed and refused" to remit such payments. Compl. ¶ 11.

Additionally, Plaintiff alleges that HACC has previously mismanaged federal funds, citing a 2016 audit conducted by the Office of the Inspector General, wherein HACC was found to be out of compliance with several of the Department of Housing and Urban Development's ("HUD's") requirements related to the Community Development Block Grant Program ("CDBG"). Compl. ¶ 31. Plaintiff alleges that because of this history, HUD "should have known that . . . HACC had a propensity for mishandling funds and should have kept an eye on . . . HACC." Compl. ¶ 33. Plaintiff also alleges that HACC "failed to complete a Resolution for an Emergency Hire" and that doing so was "the responsibility of" HACC. Compl. ¶ 13.

**II.     Standard of Review**

    **A.  Jurisdiction**

In this Court, consent to suit is generally based upon the Tucker Act, 28 U.S.C. § 1491. *United States v. Testan*, 424 U.S. 392, 397 (1976). Pursuant to this statute, sovereign immunity is waived only with respect to "claim[s] against the United States" that are "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act limits this Court's subject matter jurisdiction to claims against the United States. *See United States v. Sherwood*, 312 U.S. 584, 588 (1941) ("If the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court. . . . Or if its maintenance against private parties is prerequisite to prosecution of the suit against the United States the suit must be dismissed."); RCFC 10(a). Accordingly, relief sought against private entities or municipal agencies is not within the purview of this Court. *See id.* Further, "[r]eceipt of federal funds does not make an entity an agent of the United States." *See B & G Enters., Ltd. v. United States*, 220 F.3d 1318, 1323 (Fed. Cir. 2000) (citing *Chas H. Thompkins Co. v. United States*, 230 Ct. Cl. 754, 758 (1982)).

The Tucker Act does not create any substantive right of recovery against the United States for money damages. *Testan*, 424 U.S. at 398; *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Rather, the Tucker Act confers jurisdiction upon the Court when a substantive right in one of the listed categories already exists. *Testan*, 424 U.S. at 398; *United States v. Connolly*, 716 F.2d 882, 885 (Fed. Cir. 1983) (*en banc*). To come within the jurisdictional reach of the

Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005); *see also Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("jurisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act itself"). Whether a constitutional provision, statute, or regulation is money-mandating is a jurisdictional question that the Court must determine at the outset of litigation. *Fisher*, 402 F.3d at 1173.

The Tucker Act vests this Court with jurisdiction over certain claims against the United States and sets out the Court's jurisdiction pursuant to the CDA. *See* 28 U.S.C. § 1491(a)(2) ("[t]he Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of [the CDA]"); *see Renda Marine, Inc. v. United States*, 71 Fed. Cl. 378, 386 (2006). To the extent a party to a CDA contract demands a change to the terms of that contract or otherwise raises a dispute, the Federal Circuit has interpreted Section 7103 of the CDA to impose two distinct prerequisites to this Court's jurisdiction over disputes between contractors and the Federal Government: "the contractor's claim [must be] first presented to the contracting officer and that officer [must] render[] a final decision on the claim." *England v. Swanson Grp, Inc.*, 353 F.3d 1375, 1379 (Fed. Cir. 2004); 41 U.S.C. § 7103; *see also M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (citing *James M. Ellett Constr. Co., Inc. v. United States*, 93 F.3d 1537, 1541–42 (Fed. Cir. 1996) ("This Court has found that jurisdiction thus requires both a valid claim and a contracting officer's final decision on that claim.").

### B. Standard of Review for Motions to Dismiss Pursuant to RCFC 12(b)(1)

When deciding a motion to dismiss pursuant to RCFC 12(b)(l), the Court "assume[s] all factual allegations [in the complaint] to be true and . . . draw[s] all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995) (citations omitted). On a motion to dismiss for lack of subject-matter jurisdiction, "the plaintiff bears the burden to show by a preponderance of the evidence that the district court has subject matter jurisdiction." *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1383 (Fed. Cir. 2002). If a defendant challenges this Court's jurisdiction, the plaintiff cannot rely merely upon allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936).

### III. Discussion

### A. Counts I and II of Plaintiff's Complaint Fall Outside this Court's Jurisdiction Because these Claims are not Directed Against the United States.

In Counts I and II, Plaintiff alleges breach of contract and breach of the covenant of good faith and fair dealing, respectively. ECF No. 1. According to Plaintiff, this Court has jurisdiction to hear this case under the Tucker Act because it arises from "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1) (2001); Compl. ¶ 3. In particular, Plaintiff asserts that this Court has jurisdiction here because it involves "an implied contract that was established in light of H.R. 748, Coronavirus Aid, Relief, and Economic Security

("CARES") Act – a $2 trillion federal relief package to help respond to the COVID-19 pandemic." ECF No. 10 at 29-30.

The Government argues, under RCFC 12(b)(1), that this Court lacks jurisdiction over Plaintiff's Complaint because the contract on which Plaintiff predicates its case was not with the Government or an agency thereof. *See* Compl. ¶¶ 22–34.

To have a viable claim that withstands the Government's motion to dismiss for lack of subject matter jurisdiction, therefore, Plaintiff must be able to establish privity of contract with the Government. *See National Leased Housing Ass'n v. United States*, 105 F.3d 1423, 1435 (Fed. Cir. 1997) (Privity of contract is "an undisputed prerequisite for standing to sue in the Court of Federal Claims under the Tucker Act."); *See First Annapolis Bancorp, Inc. v. United States*, 644 F.3d 1367, 2011 WL 2675807, at *6 (Fed. Cir. July 11, 2011) ("The lack of privity impacts the lack of waiver of sovereign immunity, which is available pursuant to the Tucker Act."). Privity may be established by showing either an express or implied-in-fact contract between the parties. *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1550 (Fed. Cir. 1983).

Plaintiff demurs to the Government's dismissal argument, making various contentions to which the Court will now turn. In its Response, Plaintiff makes two arguments. First, Plaintiff alleges that privity exists between Plaintiff and HUD because HUD dispersed CARES Act funds to HACC, and HACC used these funds to pay Plaintiff for its work.[1] ECF No. 10 at 13–29, 41. Plaintiff points out that CARES Act funding is available "…to prevent, prepare for, and respond to coronavirus, including to provide additional funds for public housing agencies to maintain normal operations and take other necessary actions during the period that the program is impacted by coronavirus." ECF No. 10 at 13-14. Other than pointing to the CARES Act, Plaintiff has not cited any legal authority supporting its position that plaintiff is in privity with the Government.

Although Plaintiff alleges that HACC is "primarily funded by HUD," subject to audits by HUD, receives subsidies from HUD, and draws program funds from HUD's Integrated Disbursement and Information System, it does not follow that such receipt of funds creates privity between the parties. Compl. ¶ 1; *see Cienega Gardens v. United States*, 194 F.3d 1231, 1244 (Fed. Cir. 1998) ("it is settled that there is no privity of contract between the U.S. and a public housing contractor based on the U.S. Housing Act") (internal quotations omitted).

Plaintiff's argument that privity exists here fails. Plaintiff does not allege that there is an express or implied contract with HUD,[2] and HACC's simple use of HUD funds does not create

---

[1] In particular Plaintiff asserts, "Here, Plaintiffs have privity with defendant HUD because Defendant HUD was issued emergency funds based on an Act of Congress, and then issued those emergency funds to Defendant HACC with parameters." ECF No. 10 at 47.

[2] Plaintiff's own court filings establish that if any implied contract exists it would be with HACC, not HUD. Plaintiff's Complaint and Response specifically allege that the implied contract is between Plaintiff and HACC. Compl. ¶ 8. Further, the correspondences, remittances,

privity between Plaintiff and HUD.  See *Johnson Controls, Inc.*, 713 F.2d at 1550 (explaining that privity may be established by showing either an express or implied-in-fact contract between the parties). That HACC may be a recipient of federal funds, even funds subject to conditions, does not create privity between Plaintiff and HUD.  See *Welty v. United States*, 926 F.3d 1319, 1325 (Fed. Cir. 2019) ("The government often attaches conditions and restrictions on the receipt of federal financial assistance, . . . but such conditions and restrictions do not necessarily create any form of an agency relationship.") (citations omitted).

This principle is well-settled with respect to HUD.  See *Cienega*, 194 F.3d at 1239 ("intimate control over a [housing] project, including prior approval of plans and costs, does not establish liability [for claims by a party contracting with a public housing agency] . . . because HUD [is] not a party to any contract with [that party]") (quoting *Marshall N. Dana Const., Inc. v. United States*, 229 Ct. Cl. 862, 863 (1982)).  Plaintiff's downstream receipt of such funding does not put Plaintiff in contractual privity with HUD.  Thus, the alleged conditional grant of funds to HACC does not subject the Government to liability for HACC's actions.

Second, Plaintiff makes an agency argument that HACC had actual authority to bind the Government in contract.  Plaintiff asserts that HACC had "implied" actual authority to bind HUD in contract because "HACC was a conduit for money Congress issued to HUD under the CARES A[ct] to ensure the nation[']s issues were addressed during the Covid-19 Pandemic." ECF No. 10 at 29.  Plaintiff alleges that HACC had such authority because "HUD had specific guidelines under the CARES Act that was also applied to HACC." ECF No. 10 at 29.  Further, Plaintiff asserts that because the HACC "is a federally funded agency" it is "therefore an arm of the United States Government."  Compl. ¶ 11.

Thus, the question here is whether HACC had actual authority to affirmatively obligate the Government in a contract with Plaintiff.  The Federal Circuit has elucidated that apparent authority is not sufficient to bind the Government in contract; *actual* authority is required. *Winter v. Cath-dr/Balti Joint Venture*, 497 F.3d 1339, 1344 (Fed. Cir. 2007).  It is clear to the Court, that Plaintiff has not alleged that HACC had actual authority here nor is actual authority evident from the record.

Although Plaintiff correctly states the law in its Response that "[a]uthority to bind the government may be implied when it is an *integral* part of the duties assigned to the particular *government employee*," Plaintiff fails to establish that HACC had implied authority to bind HUD in contract here.  *Winter*, 497 F.3d at 1346 (emphasis added); ECF No. 10 at 28.

Plaintiff does not show that HACC is a federal entity for whom binding the Government in contract is an "integral part of the duties assigned" to it, especially in light of the legal authority establishing that only certain officials, none of whom are identified here, may bind the Government in contract.  See *El Centro v. United* States, 922 F.2d 816, 820–21 (Fed. Cir. 1990) (The Federal Circuit has found that, "Clearly, federal expenditures would be wholly

---

and invoice statements furnished by Plaintiff fail to mention HUD.  Compl. Ex. A; Compl. Ex. B; Compl. Ex. C.

uncontrollable if Government employees could, of their own volition, enter into contracts obligating the United States."); *Winter*, 497 F.3d at 1344, 1346. Further it is evident to the Court that HACC is not a federal entity, nor even a government contractor. *See id.* at 1344 (citing 48 C.F.R. §§ 1.601(a), 43.102) (The Federal government has expressly granted contracting authority "to only a limited class of government employees: contracting officers.").

Plaintiff does not show any evidence that HACC had actual authority to bind the Government in contract.[3] Plaintiff only explains that HACC is a "conduit for money Congress issued to HUD," and that HACC is a recipient of HUD guidance.[4] *See* ECF No. 10 at 29. This is insufficient to confer actual authority on HACC—whether implied or not—to bind the Government in contract with Plaintiff. Thus, the Court rejects Plaintiff's agency theory.

Because privity of contract does not exist between Plaintiff and HUD, this Court lacks jurisdiction to hear Count I and Count II of Plaintiff's Complaint. *See National Leased Housing Ass'n*, 105 F.3d at 1435 (Privity of contract is "an undisputed prerequisite for standing to sue in the Court of Federal Claims under the Tucker Act.").

### B. Count III of Plaintiff's Complaint Falls Outside this Court's Jurisdiction Because it is not Based on Any Money-Mandating Statute.

Although difficult to follow, it appears that Plaintiff's Count III alleges HUD should have "kept an eye" on HACC, and that HACC and HUD's "collective malfeasance" led to HACC's failure to timely pay plaintiff. Compl. ¶¶ 31–34. Plaintiff, however, fails to identify, allege, or plead any money-mandating source of law to support this Court's exercise of Tucker Act jurisdiction over this claim.

To the extent that Plaintiff attempts to invoke Section 9 of the Housing Act of 1937, Plaintiff does not and cannot cite to a provision that would require HUD to have further audited or "kept an eye" on HACC. 42 U.S.C. § 1437g; *see* Compl. ¶¶ 15, 31–33. The Section 9 grant

---

[3] Plaintiff also notes that the alleged implied contract was "in response to a national emergency, not a local HACC emergency during a time of normal operations." Pl. Resp. at 27. To the extent plaintiff intends to argue that the emergency itself granted implied authority to obligate Federal resources, such considerations would not apply here because HACC is not an employee or agent of the United States. *See, e.g.*, *El Centro*, 922 F.2d at 820–21 (considering, but declining to extend an emergency implied authority theory to the conduct of a Border Patrol Agent).

[4] Plaintiff briefly mentions illegal exactions in its response. ECF No. 10 at 24. Plaintiff, however, does not plausibly allege that the United States improperly exacted its monies. *See Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572-1573 (Fed. Cir. 1996) (quoting *Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 605, 372 F.2d 1002, 1007 (1967) ("an illegal exaction claim may be maintained when 'the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'").

provisions Plaintiff cites do not mandate the payment of unrestricted money to housing authorities, much less their contractors. *See id.* This grievance, if based upon any substantive right of recovery, would not appear to be money-mandating, but sounds in tort. Compl. ¶ 34. However, this Court does not possess jurisdiction to adjudicate tort claims. 28 U.S.C. § 1491(a)(1).

Finally, in its response brief, Plaintiff argues that the "enforcement provisions of the CARES A[ct]" are indeed "money-mandating." ECF No. 10 at 36. Plaintiff, however, fails to identify any enforcement provision of the CARES Act mandating that HUD pay unrestricted money to plaintiff here. *Id.* Additionally, it does not follow that a provision giving HUD discretion to take enforcement action against HACC would constitute a provision legally mandating that HUD pay unrestricted money to Plaintiff.[5] Accordingly, Count III should be dismissed for lack of lack of a money-mandating source of law necessary to trigger Tucker Act jurisdiction.

### C. Plaintiff Fails to Allege a Valid Contract Disputes Act Claim.

Finally, the Court addresses Plaintiff's references to the Contract Disputes Act ("CDA"). Compl. ¶ 4. Although it is unclear in its pleading if Plaintiff seeks relief under the CDA, Plaintiff has failed to comply with any jurisdictional prerequisites to bring such a claim. Compl. ¶ 4; ECF No. 10 at 33. First, it is clear that Plaintiff's claim is not a CDA claim because a CDA claim involves a claim between a contractor and the Government. 41 U.S.C. § 7101(7). Here, Plaintiff's Complaint is clearly alleged against HACC and not against the Government. Compl. ¶ 8-10, 16. Plaintiff's Complaint and Response allege that Plaintiff entered into an implied contract with HACC. Compl. ¶ 8; ECF No. 10 at 30. Moreover, Plaintiff's response admits that it is alleging a "a breach of Plaintiff's contract with HACC." ECF No. 10 at 41.

Additionally, generally, in order for this Court to obtain jurisdiction over a CDA case, a Plaintiff must first present the claim to the contracting officer. *Swanson Grp, Inc.*, 353 F.3d at 1379 ("the contractor's claim [must be] first presented to the contracting officer and that officer [must] render[] a final decision on the claim."). Here, Plaintiff has not done so. The correspondences, remittances, and invoice statements furnished by Plaintiff solely concern HACC and do not mention or involve the Government in any way. *See* Compl. Ex. A; Compl. Ex. B; Compl. Ex. C. Indeed, Plaintiff's Response does not contend that Plaintiff's claim was submitted to a HUD CO or that a HUD CO rendered a final decision the claim. Rather, Plaintiff seems to argue that presentment of the claim to HACC and a final decision by HACC are sufficient for CDA jurisdiction here. *See* Pl. Resp. at 27. This is incorrect. *See Ellett Const.*, 93 F.3d at 1541–42 (This "absence of notice and . . . failure to request a final decision [are] jurisdictional impairments for a claim under the CDA."). Accordingly, any claim Plaintiff alleges pursuant to the CDA is dismissed for lack of jurisdiction.

---

[5] Plaintiff also does not allege that it was denied relief made available by the CARES Act to small businesses. ECF No. 10 at 34–36.

**IV.    Conclusion**

Because the Court concludes that Plaintiff's Complaint is not within the subject matter jurisdiction of the court, the Court **GRANTS** the Government's Motion to Dismiss Plaintiff's Complaint pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. Because this Court does not possess jurisdiction to consider Plaintiff's Complaint, it is unnecessary to consider the Government's alternative argument that Plaintiff's Complaint fails to state a claim pursuant to RCFC 12(b)(6). The Clerk is directed to enter judgment accordingly. No costs.

**IT IS SO ORDERED.**

s/Edward J. Damich
EDWARD J. DAMICH
Senior Judge
